Edward SWARTZ, Plaintiff,

v.

Gary BEACH, Administrator of the Wyoming Department of Environmental Quality, Water Quality Division, in his official and individual capacities; Dennis Hemmer, Director of the Department of Environmental Quality, in his individual and official capacities; and Redstone Resources, Inc., a Colorado Corporation, Defendants.

No. 02–CV–044B.

United States District Court, D. Wyoming.

Oct. 7, 2002.

37. *Id.* at 754–55.

38. 170 F.3d 985 (10th Cir.1999).

1244

Clint Andrew Langer, Davis & Cannon, Sheridan, WY, Kate M. Fox, Davis & Cannon, Cheyenne, WY, for plaintiff.

Thomas John Davidson, Magdalene M. Allely, Wyoming Atty. Gen., Cheyenne, WY, for Gary Beach, Dennis Hemmer, defendants.

Keith Burron, Associated Legal Group, Cheyenne, WY, for Restone Resources, Inc., defendant.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

BRIMMER, District Judge.

This case arises from the production of coal bed methane in Northeastern Wyoming. The matter is currently before the Court on Defendant Hemmer and Beach's Motion to Dismiss Plaintiff's Second Amended Complaint pursuant to Fed. R.Civ.P. 12(b) and Defendant Redstone Resources, Inc.'s Motion to Dismiss Plaintiff's Second Amended Complaint pursuant

to Fed.R.Civ.P. 12(b). Upon reading the briefs, hearing oral argument, and being fully advised of the premises, the Court **FINDS** and **ORDERS** as follows:

### Statement of Parties and Jurisdiction

The Plaintiff, Ed Swartz, owns and operates a ranch in Campbell County, Wyoming. The Swartz ranch is approximately 280 acres of hay meadows irrigated by Plaintiff pursuant to his adjudicated water right on Wildcat Creek.[1]

Defendant Gary Beach is being sued in his individual and official capacities as the Administrator of the Wyoming Department of Environmental Quality, Water Quality Division ("WDEQ"). Defendant Dennis Hemmer is being sued in his individual and official capacities as Director of the WDEQ. (Defendants Beach and Hemmer will be collectively referred to as "State Defendants").

Defendant Redstone Resources, Inc. ("RRI"), a Colorado corporation, is a gas company that operates in the Powder River Basin of Wyoming producing coal bed methane ("CBM").

### Background

RRI operates in the Rough Draw Field, a CBM field located near Gillette, Wyoming. The Rough Draw Field encompasses a significant portion of the Wildcat Creek drainage.[2] Incident to its CBM operation, RRI discharges CBM process water pursuant to permits issued by the WDEQ. The WDEQ administers the National Pollutant Discharge Elimination System (NPDES) program.

---

1. Wildcat Creek is an ephemeral stream and is a tributary of Horse Creek, a tributary of the Little Powder River.

2. Producing CBM from coal formations requires that water be extracted from the coal

bearing formation, which is accomplished by pumping water from the coal formation to the surface. This allows the methane gas in the coal seam to mobilize and migrate to CBM wells where it can be collected, compressed, and delivered into a pipeline system.

In October of 1999, CBM discharge water began to flow through the Swartz Ranch in Wildcat Creek due to the operation of RRI's CBM wells in the Wildcat Creek basin. Since October 1999, Plaintiff claims the CBM discharge water has been continuous during the winter months (October to April). As a result, during the summer months (April to September) Wildcat Creek has an insufficient flow of water to enable Plaintiff to irrigate his ranch. Plaintiff further contends that the CBM discharge water flowing in Wildcat Creek through his ranch is unsuitable for irrigation and has caused permanent soil damage because of the elevated salinity and sodium absorption ratio ("SAR") in the CBM discharge water.[3] Plaintiff's hay meadows were not irrigated in 2000 and 2001 because of the lack of water or when water was available its high salinity.

Plaintiff alleges that as a consequence of the CBM discharge water the channel vegetation in Wildcat Creek has been killed or replaced by salt-tolerant species that are less valuable as forage. Further, the increased salinity has altered the soil composition of the channel to an extent that it is unlikely that the channel will be capable of sustaining the vegetation it once supported. Plaintiff contends that if he used the CBM discharge water with high salinity for irrigation purposes it would: (1) reduce crop production; (2) increase soil salinity over time further decreasing and preventing crop production; and (3) permanently alter the soil composition which would prevent the land from sustaining its current vegetation. Thus, Plaintiff claims he has been deprived of his adjudicated

water right and that his property is being permanently damaged by RRI's CBM discharge water.

Since the CBM discharge water began flowing through Plaintiff's property in Wildcat Creek he has made a number of requests, without avail, to have the State Defendants remedy the situation. Specifically, Plaintiff alleged that notwithstanding several complaints about the CBM discharge water to Defendant Beach, the WDEQ did not take any action until it finally performed an investigation in August 2000. On October 25, 2000, the preliminary report of this investigation found extensive salt deposits in the stream channel; however, the WDEQ took no further action. On January 26, 2001, Plaintiff formally requested that Defendant Beach "take action" pursuant to the Wyoming Environmental Quality Act and the Water Quality Regulations. Defendant Beach informed the Plaintiff that he could do nothing until he received the final results from the August investigation.

In March 2001, the final report of the August investigation was released. The final report disclosed that the Wildcat Creek had SAR levels of 10 (Plaintiff claims an informal acceptable level is 6) and EC levels of 5,160. As a result of the final report, Defendant Beach asked Defendant RRI to rectify these concerns before any informal enforcement action would occur. No further action was taken by Defendants Beach or RRI. On February 15, 2002 Plaintiff wrote to Defendant Hemmer requesting a response to the unanswered Petition for Review by

---

**3.** Plaintiff's Second Amended Complaint alleges that the two most important water quality parameters regarding the impact of CBM discharge water on soils and vegetation are salinity (the measure of dissolved salts in water) and the SAR (a measure of the ratio of sodium to calcium and magnesium in the water). Plaintiff further alleges that salinity levels are measured by electrical conductivity ("EC") and that high salinity levels in water can cause changes in the soil structure making water less available to plants in the root zone. Plaintiff claims that SAR value impacts plant production by slowing infiltration and reducing the permeability of the soil thereby decreasing productivity.

the Director of WDEQ. Hemmer never responded to that request. Plaintiff claims Hemmer has not taken any action to remedy RRI's ongoing pollution of Wildcat Creek.

Plaintiff further contends that he has attempted to review the NPDES permit files for CBM producers in the Wildcat Creek drainage for the past two years. Plaintiff maintains that Daily Monitoring Reports ("DMR") were absent from most files and when the files were made complete several facts became apparent: (1) WDEQ was not timely reviewing data that would be the basis for permit compliance submitted by CBM producers; and (2) that the data was not available to determine permit compliance.

On December 29, 2001, twelve of RRI's permits for CBM wells in the Wildcat Drainage were set to expire. Before the re-issuance of the permits, a public comment period was held. Plaintiff attended the comment period and discussed the alleged damage to his ranch and provided scientific data to support his allegation. Nevertheless, a day after the comment period ended, the permits were re-issued to RRI on January 1, 2002.

The permits issued to RRI on January 1, 2002 contained new restrictions on the discharge of CBM water. The permits provided that after April 1, 2002, the CBM discharge water's salinity level was not to exceed 2000 EC. The salinity of the discharge water was to be measured where Wildcat Creek entered Plaintiff's ranch. Plaintiff alleges that water samples taken from the Wildcat Creek in April 2002 indicated EC levels above 2000. Additionally, Plaintiff contends that a WDEQ investigator determined that RRI was in violation of its permits. However, the State Defendants still did not take any enforcement action.

In his Second Amended Complaint, Plaintiff has alleged the following causes of action against the State Defendants: (1) Taking of Private Property Without Just Compensation by failing to perform their statutory and regulatory duties to remedy the damage caused by RRI (Fourth Cause of Action); (2) Taking of Private Property Without Due Process of Law because State Defendants inaction has resulted in a violation of substantive and procedural due process rights under the United States and Wyoming Constitutions (Fifth Cause of Action); (3) Preliminary and Permanent Injunction to restrain State Defendants from allowing RRI and other producers of CBM in the Wildcat Drainage from discharging water in such a way as to violate Plaintiff's constitutional rights, federal environmental laws, and state environmental laws (Seventh Cause of Action).

Plaintiff has alleged the following causes of action against RRI: (1) Nuisance for continuously discharging water from its CBM operations onto the Swartz Ranch causing an unwarranted, unreasonable, and unlawful injury to Plaintiff's use of the land (First Cause of Action); (2) Trespass for RRI's discharge of water from its CBM operations onto the Swartz Ranch without the Plaintiff's consent, which has caused damage and interfered with Plaintiff's exclusive possessory interest (Second Cause of Action); (3) Clean Water Act ("CWA") violation for RRI's discharge of CBM process water in a manner that has caused the degradation of Wildcat Creek and for violating the terms of its NPDES permits (Third Cause of Action); and (4) Preliminary and Permanent Injunction against RRI to prevent the continued discharge of water from its CBM wells directly or indirectly into Wildcat Creek or otherwise preventing tainted water from reaching Plaintiff's property (Sixth Cause of Action).

Additionally, Plaintiff has sought punitive damages against all Defendants,

claiming they have acted in a willful and wanton manner (Eighth Cause of Action).

## Procedural Background

Plaintiff filed his initial Complaint in this matter on March 14, 2002. On April 19, 2002, before Defendants had answered the Complaint, Plaintiff filed an Amended Complaint which added his claim for punitive damages. The State Defendants and RRI filed independent Motions to Dismiss on May 3, 2002. On June 11, 2002 this Court entered an order granting Plaintiff's Motion for Leave to File a Second Amended Complaint and striking the previously set hearing. On July 5, 2002 RRI and the State Defendants filed independent Motions to Dismiss Plaintiff's Second Amended Complaint. On August 5, 2002 Plaintiff filed his Response to the Defendants' Motions to Dismiss. On August 23, 2002 this Court heard oral argument by all the parties on the various Motions to Dismiss.

## Legal Standards

I. Fed.R.Civ.P. 12(b)(6) Legal Standard.

A federal district court may dismiss a cause of action for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6) only when it appears beyond a doubt that the plaintiff can prove no set of facts that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Yousef v. Reno*, 254 F.3d 1214, 1219 (10th Cir.2001). The district court must assume plaintiff's allegations are true and construe them liberally in the light most favorable to him. *Conley*, 355 U.S. at 45–46, 78 S.Ct. 99; *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1118 (10th Cir.1997). The district court's function on a Rule 12(b)(6) motion is to assess whether the plaintiff's complaint alone is legally sufficient to state a claim on which relief may be granted. *Sutton v. Utah State Sch. for the Deaf and Blind*, 173 F.3d 1226, 1236 (10th Cir.1999). In so assessing, the district court is not to weigh

potential evidence that might be presented or determine who will ultimately prevail; rather, the issue is whether the plaintiff is entitled to offer evidence to support his claim. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

II. Fed.R.Civ.P. 12(b)(1) Legal Standard.

 The party invoking federal jurisdiction has the burden of proving by a preponderance of the evidence that jurisdiction exists. *United States ex. rel. Holmes v. Consumer Ins. Group*, 279 F.3d 1245, 1249 (10th Cir.2002). A motion to dismiss for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1) may take two forms. When a defendant makes a facial attack on the complaint's allegations, which challenges the sufficiency of the complaint, the district court will accept the plaintiff's allegations as true. *Cal. Cas. & Fire Ins. Co. v. Brinkman*, 50 F.Supp.2d 1157, 1161 (D.Wyo.1999). If, however, the defendant goes beyond the allegations contained in the complaint and challenges the facts upon which subject matter jurisdiction depends, the district court will not presume the truthfulness of the plaintiff's allegations and has wide discretion to consider other documents to resolve the jurisdictional question. *Id.*

III. Fed.R.Civ.P. 12(b)(7) Legal Standard.

 On a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(7), the movant bears the burden of: (1) producing evidence showing the nature of the interest possessed by an absent party; and (2) that the protection of that interest will be impaired if the party is not joined. *Citizen Band Potawatomi Indian Tribe v. Collier*, 17 F.3d 1292, 1293 (10th Cir.1994). The movant can satisfy this burden by providing the district court with extra-pleading evidence, such as affidavits of persons hav-

ing knowledge of the absent parties' interests. *See id.* A Rule 12(b)(7) motion will not be granted on the "vague possibility that persons who are not parties may have an interest in the action." *Sunrise Fin. v. Painewebber, Inc.,* 948 F.Supp. 1002, 1006 (D.Utah 1996) (internal quotations and citations omitted).

## Analysis

I. State Defendants' (Beach and Hemmer) Rule 12(b) Motion to Dismiss Plaintiff's Complaint.

A. State Defendants' Motion to Dismiss for Lack of Subject Matter and Personal Jurisdiction Pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(2) based on Eleventh Amendment Immunity.

State Defendants argue they are entitled to Eleventh Amendment immunity. Therefore, they assert Plaintiff's Second Amended Complaint[4] should be dismissed because this Court lacks personal and subject-matter jurisdiction. (Defs.' Rule 12(b) Mot. to Dismiss Pl.'s Second Am. Compl., ¶ 1, at 2–3). Plaintiff's Seventh Cause of Action seeks to enjoin State Defendants from continuing to permit RRI and other CBM producers from discharging water into Wildcat Creek in a way that violates (1) Swartz's constitutional rights, (2) the environmental laws of the United States, and (3) the laws of the State of Wyoming.

(Pl.'s Second Am. Compl., ¶ 64(2),[5] at p. 16).

1. The Eleventh Amendment.

■■■■ The Eleventh Amendment provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend . XI. The Eleventh Amendment restricts a federal court's subject-matter jurisdiction by proscribing suits against an unconsenting state by citizens of another state. *Id.; Seminole Tribe of Fla. v. Florida,* 517 U.S. 44, 54, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996).[6] The Supreme Court has interpreted the Eleventh Amendment to embody the principle of sovereign immunity. *Alden v. Maine,* 527 U.S. 706, 713, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999); *Hans v. Louisiana,* 134 U.S. 1, 10, 20, 10 S.Ct. 504, 33 L.Ed. 842 (1890). Accordingly, the Supreme Court has held that the Eleventh Amendment also bars suits against a state brought by a citizen of that state. *Id.* at 727–28, 119 S.Ct. 2240. Moreover, the Eleventh Amendment and the principle of sovereign immunity that it embodies bar suits brought against state officials when the state is the real, substantial party in interest. *Pennhurst State Sch. & Hosp. v.*

**4.** Plaintiff's Second Amended Complaint will be referred to simply as Plaintiff's "Complaint."

**5.** Plaintiff has misnumbered the paragraphs in his Complaint. The Complaint correctly numbers ¶¶ 1–80, then the numbering regresses to ¶ 64. To avoid confusion, this Court will indicate the page number and place a "(2)" behind any paragraph number that is appearing for the second time.

**6.** The State Defendants assert that Plaintiff's claims should be dismissed because their alleged Eleventh Amendment immunity divests

this Court of personal jurisdiction over the Plaintiff. The Court agrees that the Eleventh Amendment "defense" possesses qualities of personal jurisdiction; for example, the defense can be waived by an affected party. *See Archuleta v. Lacuesta,* 131 F.3d 1359, 1362 (10th Cir.1997). However, an assertion of Eleventh Amendment immunity "is a challenge to the subject matter jurisdiction of the district court ...." *Frazier v. Simmons,* 254 F.3d 1247, 1252 (10th Cir.2001). Therefore, the State Defendants' assertion that this Court lacks personal jurisdiction over the Plaintiff because of the Eleventh Amendment is without merit.

*Halderman,* 465 U.S. 89, 101, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984).

2. Limitations on Eleventh Amendment Immunity.

Eleventh Amendment immunity is not absolute. *See Estes v. Wyo. DOT,* 302 F.3d 1200, 1201 (10th Cir.2002). The Tenth Circuit has explained that there are "two clearly recognized exceptions to the general immunity protections of the Eleventh Amendment: (1) a state may consent to be sued, or (2) Congress may clearly and expressly abrogate the states' immunity." *Elephant Butte Irrigation Dist. of New Mexico v. D.O.I.,* 160 F.3d 602, 607 (10th Cir.1998). Additionally, a plaintiff may obtain relief against a state under the *Ex parte Young* doctrine notwithstanding a state's sovereign immunity. *ANR Pipeline Co. v. Lafaver,* 150 F.3d 1178, 1188 (10th Cir.1998). Both parties recognize, and this Court agrees, that the central issue in determining whether the Eleventh Amendment cloaks the State Defendants with immunity is the *Ex parte Young* doctrine.

3. The Ex Parte Young Doctrine.

 Under the *Ex Parte Young* doctrine, a federal district court can retain jurisdiction over a suit against a state official in his official capacity to prevent a continuing violation of federal law. *Green v. Mansour,* 474 U.S. 64, 68, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985). Hence, "when a party seeks only prospective equitable relief-as opposed to any form of money damages or other legal relief ... the Eleventh Amendment generally does not stand as a bar to the exercise of the judicial power of the United States." *ANR Pipeline Co.,* 150 F.3d at 1188 *citing Ex parte Young,* 209 U.S. 123, 158–59, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

 To determine whether the *Ex Parte Young* doctrine applies, a district court must look at the relief sought by the plaintiff. *Powder River Basin Resource Council v. Babbitt,* 54 F.3d 1477, 1483 (10th Cir.1995). The Eleventh Amendment bars a suit that seeks retroactive relief because in such instances the State, as opposed to the named-official, is the real, substantial party in interest. *Id.* Conversely, suits that seek prospective relief are permitted because those suits are deemed to be against the official and not the sovereign state. *Id.*

 Plaintiff has alleged that the State Defendants' refusal to enforce the CWA has resulted in an unconstitutional taking of his property. (Pl.'s Second Am. Compl., at ¶¶ 36, 38, 66, 67, 72). To determine whether the *Ex parte Young* doctrine applies, this Court must look at the relief Plaintiff seeks. Plaintiff's Seventh Cause of Action seeks prospective injunctive relief against the State Defendants to prevent them from continuing to violate federal and state environment laws and the Constitution. Therefore, the *Ex parte Young* doctrine allows this Court to retain jurisdiction over Plaintiff's Seventh Cause of Action.

 Plaintiff's Complaint also includes a "cause of action" for punitive damages against "[a]ll defendants." (Pl.'s Second Am. Compl., ¶¶ 66(2), 67(2), at p. 16; *see also* Pl.'s Combined Resp. to All Defs.' Mots. to Dismiss Pl.'s Second Am. Compl., at p. 2). To the extent Plaintiff seeks monetary damages against the State Defendants in their official capacities for past violations of the CWA, the claim is barred by the Eleventh Amendment. However, a " 'suit for money damages may be prosecuted against a state officer in his individual capacity for unconstitutional or wrongful conduct fairly attributable to the officer himself, so long as the relief is sought not from the state treasury but from the officer personally.' " *Cornforth*

*v. Univ. of Okla. Bd. of Regents,* 263 F.3d 1129, 1133 (10th Cir.2001) *quoting Alden v. Maine,* 527 U.S. 706, 757, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999); *Meade v. Grubbs,* 841 F.2d 1512, 1526 n. 16 (10th Cir.1988). Therefore, Plaintiff's request for punitive damages against the State Defendants in their individual capacities for their alleged unconstitutional takings shall be allowed to proceed.

 4. Limitations on the *Ex parte Young* Doctrine.

There are several limitations on the *Ex parte Young* doctrine. *Frazier v. Simmons,* 254 F.3d 1247, 1253 n. 2 (listing the six limitations on the *Ex parte Young* doctrine). However, only three of these limitations are relevant to the State Defendants' Rule 12(b)(1) motion to dismiss.

 a. Requiring a state official to comply with state law.

■ It is well established that a federal district court cannot retain jurisdiction over a suit that seeks to require a state official to comply with state law. *Pennhurst,* 465 U.S. at 106, 104 S.Ct. 900; *Frazier,* 254 F.3d at 1253 n. 2.

■ Plaintiff's "Seventh Cause of Action" requests that this Court enjoin State Defendants from continuing to permit RRI to discharge CBM water "in such a way as to violate ... the environmental laws of ... the State of Wyoming." Consistent with the Eleventh Amendment, this Court cannot retain jurisdiction over any claims that seek to require a state official to comply with state law. Therefore, State Defendants' Motion to Dismiss Plaintiff's Seventh Cause of Action for lack of jurisdiction is **GRANTED IN PART** as to the request that this Court enjoin State Defendants from continuing to discharge CBM water in violation of the laws of the State of Wyoming.

 b. *Seminole Tribe* Limitation.

■ Federal courts should not invoke the judicially created *Ex parte Young* doctrine "where Congress 'has prescribed a detailed remedial scheme for the enforcement against a State of a statutorily created right ... [.]'" *ANR Pipeline Co.,* 150 F.3d at 1189 *quoting Seminole Tribe of Fla. v. Florida,* 517 U.S. 44, 74, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). This limitation imposes an obligation on federal courts "to examine Congress' stated intent with respect to the scope of statutory remedies that may be available" when the *Ex parte Young* doctrine is implicated. *Id.* In so examining,

> [t]he crucial inquiry is whether Congress has expressed an intent, through some kind of statutory scheme, *to limit or prevent potential remedies in a private cause of action* even though broader remedies might otherwise be available against the state through the *Ex parte Young* rule. If so, then ...the federal courts are not ordinarily free to go beyond that congressional intent.

*Id.* (emphasis added).

For example, the Indian Gaming Regulatory Act (IGRA), 25 U.S.C. § 2710, and the Tax Injunction Act, 28 U.S.C. § 1341, are statutory schemes in which Congress has expressed an intent to limit potential remedies even though broader remedies might have been available against the State under the *Ex parte Young* doctrine. *Seminole Tribe,* 517 U.S. at 74–75, 116 S.Ct. 1114; *ANR Pipeline Co.,* 150 F.3d at 1191. Namely, pursuant to the IGRA, a federal court only has the power to issue an order directing the State and Indian Tribe to enter into a compact within a statutorily prescribed time. 25 U.S.C. § 2710(d)(7). Likewise, the Tax Injunction Act limits the power of the federal courts to issue certain types of remedies pertaining to the assessment, levy, or collection of state taxes. 28 U.S.C. § 1341. As a re-

sult, the remedies available to litigants under IGRA and the Tax Injunction Act are "significantly narrower" than the remedies that would have been available under the *Ex parte Young* doctrine.

On the other hand, if a statutory scheme does not limit the role or power of the federal district court, then jurisdiction under the *Ex parte Young* doctrine is not precluded. On three occasions, the Tenth Circuit has concluded that jurisdiction under *Ex Parte Young* was not precluded by a statutory scheme that did not limit the role or power of the district court to grant certain types of relief. *See, e.g., Ellis v. Univ. of Kan. Med. Center*, 163 F.3d 1186 (10th Cir.1998); *MCI Telecommunications Corp. v. Public Service Comm'n of Utah*, 216 F.3d 929 (10th Cir.2000); *Joseph A. v. Ingram*, 275 F.3d 1253 (10th Cir.2002).

In *Ellis*, the plaintiff brought an action alleging the state-defendant violated her constitutional rights and 42 U.S.C. §§ 1981, 1983, and 1985. 163 F.3d at 1189. The defendant-state argued that under *Seminole Tribe* it was impermissible to seek injunctive relief against a public official on the basis of a federal statute that does not abrogate the state's Eleventh Amendment immunity. *Id.* at 1196. The Tenth Circuit rejected this broad reading of *Seminole Tribe;* instead, it held: (1) that because §§ 1983 and 1985 did not create any substantive rights, but merely enforced existing constitutional and federal statutory rights, the *Seminole Tribe* analysis was inapposite; and (2) that § 1981[7] did not contain a detailed remedial scheme designed to limit or prevent potential remedies that a federal court could issue. *Id.* at 1197. The Tenth Circuit explained that there was "nothing in § 1981 that shows

Congress intended to limit or bar remedies generally available to an aggrieved party." *Id.* at 1198; *see also, MCI Telecommunications*, 216 F.3d at 939–40 (holding section 252 of the Telecommunications Act, which provides aggrieved parties with a private cause of action, was not precluded by *Seminole Tribe* limitation on the *Ex parte Young* doctrine).

Similarly, in *Ingram*, the Tenth Circuit held that the Adoption and Safe Families Act, 42 U.S.C. §§ 673b, 679b, 678, and the Adoption Assistance and Child Welfare Act, 42 U.S.C. § 670 *et. seq.*, did "not provide remedial schemes sufficient to foreclose *Ex parte Young* jurisdiction" because the statutes did not provide for remedies more limited or materially different than available under *Ex parte Young.* 275 F.3d at 1264.

The CWA is not a statutory scheme with remedies that are "significantly narrower" than those available under the *Ex parte Young* doctrine. Unlike the IGRA and Tax Injunction Act, the CWA does not contain significant restrictions on the ability of a federal court to fashion certain remedies. Instead, the CWA provides that "any citizen may commence a civil action on his own behalf ... to the extent permitted by the [E]leventh [A]mendment ...." 33 U.S.C. § 1365(a). As the Supreme Court implicitly acknowledged in *Seminole Tribe*, this language evidences a Congressional intent to provide a private litigant with remedies traditionally available under the *Ex parte Young* doctrine. *See Seminole Tribe*, 517 U.S. at 75 n. 17, 116 S.Ct. 1114 (comparing provisions of the IGRA and the CWA's citizen suit provision to illustrate that, consistent with the Court's holding, Congress could authorize

---

7. In pertinent part, section 1981 provides: "all persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, *to sue* ... and to the full and equal

benefit of all laws and proceedings for the security of person and property enjoyed by white persons." 42 U.S.C. § 1981 (emphasis added).

federal jurisdiction under *Ex parte Young* over a cause of action with a limited remedial scheme).

Consequently, several courts have permitted suits for prospective injunctive relief against state officials in order to enjoin a continuing violation of the CWA. *Natural Resources Defense Council v. Cal. Dep't of Transp.*, 96 F.3d 420, 423 (9th Cir.1996) (collecting cases). In *Natural Resources Defense Council*, the defendant-state official argued that the district court erred in denying his motion to dismiss a citizen suit under the CWA for lack of subject matter jurisdiction because he was immune from suit under the Eleventh Amendment. *Id.* at 421. The Ninth Circuit disagreed and held that the district court had subject matter jurisdiction over the suit because "Congress implicitly intended to authorize citizens to bring *Ex parte Young* suits against state officials with the responsibility to comply with the clean water standards *and permits.*" *Id.* at 424 (emphasis added).

 After examining Congress' intent with respect to the statutory remedies available in the CWA, this Court finds that Congress did not intend to limit or prevent potential remedies that might otherwise be available against the state under the *Ex parte Young* doctrine. The CWA's citizen suit provision evidences Congress' intent to allow an individual to seek the traditional remedial powers of the federal court to the "extent permitted by the Eleventh

Amendment." Applying *Ex parte Young* does not supplant the CWA's remedial scheme; hence, unlike the IGRA and the Tax Injunction Act, the CWA falls within the *Ex parte Young* doctrine. Therefore, the *Seminole Tribe* limitation on the *Ex parte Young* doctrine does not divest this Court of jurisdiction over the claims seeking to enjoin the State Defendants from violating the CWA.

### c. *Coeur d'Alene Tribe* Limitation.

 Federal courts cannot grant prospective injunctive relief under the *Ex parte Young* doctrine when the relief requested would implicate special sovereignty interests of the state. *Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261, 282–83, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997). Thus, before a federal court can grant prospective injunctive relief against a state official it must determine: (1) whether the relief being sought against a state official implicates special sovereignty interests; and if so, (2) whether the relief requested is the functional equivalent to a form of legal relief barred by the Eleventh Amendment. *ANR Pipeline*, 150 F.3d at 1190; *Ellis*, 163 F.3d at 1198.

Since *Coeur d'Alene Tribe*, several state officials haled into federal court under the *Ex Parte Young* doctrine have argued, like the State Defendants do here, that the prospective relief sought by the plaintiff implicates "special sovereignty interests" of the state.[8] However, the Tenth Circuit

---

8. *See, e.g., Ellis*, 163 F.3d at 1198 (holding that claims asserted under 42 U.S.C. §§ 1981, 1983, and 1985 do not implicate special sovereignty interests); *Joseph A. v. Ingram*, 275 F.3d 1253, 1261 (10th Cir.2002) (holding that a state's administration of a welfare program does not implicate special sovereignty interests); *Branson Sch. Dist. RE–82 v. Romer*, 161 F.3d 619, 632–33 (10th Cir.1998) (holding that although a state's ownership of public lands *may* fall within the special sovereignty interests of the state, the plaintiff's requested

relief was not the functional equivalent to form of legal relief barred by the Eleventh Amendment); *Roe No. 2 v. Ogden*, 253 F.3d 1225, 1234 (10th Cir.2001) (holding that an action challenging the Colorado Supreme Court's bar admission rules did not fall within the "special sovereignty interests" exception because the plaintiffs only sought injunctive relief); *Elephant Butte Irrigation Dist. v. DOI*, 160 F.3d 602, 612–13 (10th Cir.1998) (holding New Mexico's property interest-a claim to profits-in a recreational land lease between it

has only found the "special sovereignty interest" limitation on the *Ex parte Young* doctrine applicable one time. *ANR Pipeline,* 150 F.3d at 1193–94. In *ANR Pipeline,* the Tenth Circuit held that Kansas' special sovereignty interests were implicated under the Tax Injunction Act because granting the plaintiff's prospective relief would, in effect, divest Kansas of its' power to assess and levy personal property taxes and "a state's interests in the integrity of its property tax system lie at the core of the state's sovereignty." *Id.* at 1193. Second, the relief requested by the plaintiff in *ANR Pipeline* was the functional equivalent to a form of legal relief barred by the Eleventh Amendment; namely, "a request to 'rectify' property tax assessments . . . is the 'functional equivalent' of a money judgment against the state and it intrudes on the state's special sovereignty interests." *Id.* at 1194 n. 17. Thus, *ANR Pipeline,* like *Coeur d'Alene Tribe,* was one of the those "extreme and unusual" cases because it involved special circumstances that caused offense to the state's sovereign authority. *Elephant Butte Irrigation Dist.,* 160 F.3d at 612.

State Defendants argue that "Wyoming's interpretation, management, and enforcement of it's [sic] own environmental laws implicates special sovereignty interests" thereby bringing this case within the limitation on the *Ex parte Young* doctrine carved out by the Supreme Court in *Coeur d'Alene Tribe.* (State Defs.' Rule 12(b) Mot. to Dismiss Pl.'s Compl., at p. 5). Plaintiff responds that Wyoming's special sovereignty interests are not implicated in the present action because "[r]egulation of CBM discharges in a small ephemeral stream in [Wyoming] does not 'lie at the core of the state's sovereignty.'" (Pl.'s Resp. to State Defs.' Mot. to Dismiss, at p. 11).

■ This Court agrees that regulation of CBM discharge water under the CWA does not implicate special sovereignty interests because Plaintiff's requested relief would not change the nature of the State's ownership and regulation of the ephemeral stream. As was the case in *Branson Sch. Dist. RE–82 v. Romer,* Plaintiff's "requested relief affects only *limited* aspects of how the state may manage [its] public lands." 161 F.3d 619, 632 (10th Cir.2001). Moreover, even assuming Plaintiff's claims raised special sovereignty interests, Plaintiff's cause of action still does not fall within the limitation on *Ex parte Young* espoused by the Supreme Court in *Coeur d'Alene Tribe* because the Plaintiff's requested relief is not the functional equivalent of a form of legal relief barred by the Eleventh Amendment (i.e., a quiet title action or an action for money damages). Therefore, this Court finds that the "special sovereignty interest" limitation on the *Ex parte Young* doctrine does not preclude Plaintiff's claims for prospective injunctive relief.

5. Conclusion.

This Court **DENIES** the State Defendants' Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction. This Court **GRANTS** State Defendants' Rule 12(b)(1) motion to dismiss Plaintiff's Eighth Cause of Action against Hemmer and Beach to the extent it seeks monetary damages against the State Defendants while they were acting in their official capacity. This Court **GRANTS** the State Defendants' Rule 12(b)(1) motion to dismiss Plaintiff's Seventh Cause of Action to the extent the Plaintiff seeks to require State Defendants to comply with Wyoming state law. This Court **DENIES** the State Defendants' Rule 12(b)(1) motion to dismiss Plaintiff's

and the federal government did not raise special sovereignty interests because allowing

suit under *Ex parte Young* would only have a minimal effect on the autonomy of the state).

Seventh Cause of Action for prospective injunctive relief because this Court **FINDS** it has subject matter jurisdiction under the *Ex parte Young* doctrine.

B. State Defendants' Motion to Dismiss Plaintiff's 42 U.S.C. § 1983 Claim Pursuant to Fed.R.Civ.P. 12(b)(6).

State Defendants argue that because "Plaintiff is using § 1983 as a vehicle to bring his private takings claims, which are based on alleged violations of the CWA, those claims fail as a matter of law." (Br. in Supp. of State Defs.' Rule 12(b) Mot. to Dismiss Pl.'s Compl., at p. 9). Specifically, State Defendants assert that under the *National Sea Clammers* doctrine, Plaintiff's constitutional taking claims predicated on 42 U.S.C. § 1983 are precluded by the CWA's comprehensive enforcement scheme. Plaintiff responds that in the Tenth Circuit, the *National Sea Clammers* doctrine does not preclude him from bringing § 1983 claims based on independent constitutional violations. (Pl.'s Resp. to Defs.' Mot. to Dismiss, at p. 13–14).

The *National Sea Clammers* doctrine provides that

> [w]hen remedial devices provided in a particular Act are sufficiently comprehensive, they may suffice to demonstrate congressional intent to preclude the remedy of suits under § 1983.... [Therefore] when a state official is alleged to have violated a federal statute which provides its own comprehensive enforcement scheme, the requirements *of that enforcement procedure* may not be bypassed by bringing suit directly under § 1983.

*Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Assoc.*, 453 U.S. 1, 20, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981) (internal citations and quotations omitted) (emphasis added). In *National Sea Clammers,* the Supreme Court concluded that the Federal Water Pollution Control Act (FWPCA) and Marine Protection, Research, and Sanctuaries Act (MPRSA) contained comprehensive enforcement schemes. *Id.* As a result of the FWPCA and MPRSA's comprehensive enforcement schemes, the Court reasoned that Congress could not have intended for the plaintiffs to be able to assert a cause of action under § 1983 alleging violations of the FWPCA and MPRSA. *Id.*

On one other occasion, the Supreme Court has found a statutory enforcement scheme comprehensive enough to preclude suit under § 1983. In *Smith v. Robinson,* the Court held that the Education of the Handicapped Act (EHA), 20 U.S.C. § 1400 *et. seq.,* contained a comprehensive enforcement scheme that precluded the plaintiff from bringing an action under § 1983 for violations of the Equal Protection Clause. 468 U.S. 992, 1009, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984). The Court reached this conclusion because the equal protection claims were "virtually identical" to the EHA claims and the EHA's legislative history demonstrated Congress' intent to preclude reliance on § 1983 to remedy violations of the EHA. *Id.* at 1009–1013, 104 S.Ct. 3457.[9]

However, since its decisions in *National Sea Clammers* and *Smith* the Supreme Court has limited the viability of the *National Sea Clammers* doctrine. *See, Wright v. Roanoke Redevelopment and Housing Auth.,* 479 U.S. 418, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987); *Wilder v. Va. Hosp. Ass'n,* 496 U.S. 498, 110 S.Ct. 2510,

---

9. Subsequently, Congress "amended the EHA with a provision that clearly rejected the Court's interpretation of the EHA as the exclusive avenue to pursue constitutional claims for a free education to disabled children." *Baumgardner v. County of Cook,* 108 F.Supp.2d 1041, 1048 (N.D.Ill.2000).

110 L.Ed.2d 455 (1990); *Blessing v. Freestone*, 520 U.S. 329, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997). The Court has noted that "the availability of administrative mechanisms to protect the plaintiff's interest is not necessarily sufficient to demonstrate Congress intended to foreclose a § 1983 remedy." *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 106, 110 S.Ct. 444, 107 L.Ed.2d 420 (1989).

■■■ Moreover, the *National Sea Clammers* doctrine does not preclude a litigant from bringing § 1983 based on independent constitutional violations. *Southwest Air Ambulance, Inc. v. City of Las Cruces*, 268 F.3d 1162, 1176 (10th Cir.2001) ("In this circuit we have made clear that the Court's opinions in *Sea Clammers* and *Smith* are not understood to preclude plaintiffs from bringing § 1983 claims based on independent constitutional violations."). In this regard, the Tenth Circuit has agreed with the Sixth Circuit that the

> *National Sea Clammers* doctrine "speaks only to whether federal statutory rights can be enforced both through the statute itself *and* through section 1983"; it does not "stand for the proposition that a federal statutory scheme can preempt independently existing constitutional rights, which have contours distinct from the statutory claim."

*Seamons v. Snow*, 84 F.3d 1226, 1233 (10th Cir.1996) *quoting Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 723 (6th Cir. 1996); *see also Starrett v. Wadley*, 876 F.2d 808, 814 (10th Cir.1989) ("If a plaintiff can show a constitutional violation by someone acting under the color of state law, then the plaintiff has a cause of action under section 1983, regardless of [a statute's] concurrent application.").

The State Defendants argue that Plaintiff's taking "claims are not independent of, but are instead inextricably linked to the CWA" because Plaintiff alleged that their acts and omissions in issuing the NPDES permit to RRI resulted in the unconstitutional taking. (Br. in Supp. of State Defs.' Rule 12(b) Mot. to Dismiss Pl.'s Compl., at p. 10). Hence, according to the State Defendants, all Plaintiff has alleged is a violation of the CWA, which the Supreme Court has already noted contains a comprehensive enforcement scheme. (*Id.*) Therefore, Plaintiff's suit is allegedly barred under *National Sea Clammers* because he is "attempting to bring a § 1983 private a right action based on the CWA . . . ." (*Id.* at 13.) Additionally, State Defendants assert that if Plaintiff is allowed to bring his § 1983 claim, the State of Wyoming would be deprived of the administrative remedies provided in the CWA. (*Id.* at 10.)

■■■ The State Defendants misconstrue the nature of the Plaintiff's constitutional claims. Plaintiff "is not attempting to predicate [his] 42 U.S.C. § 1983 action on violations of the [CWA]. Instead, [he] is using 42 U.S.C. § 1983 as a vehicle to vindicate rights arising independently under the Constitution." *Classic Communications, Inc. v. Rural Telephone Service, Co.*, 956 F.Supp. 896, 906 (D.Kan.1996). Plaintiff has alleged, in effect, that but for the State Defendants violations of the CWA, his property would not have been unconstitutionally taken. Under *Southwest Air Ambulance, Seamons*, and *Wadley*, the *National Sea Clammers* doctrine would not preempt Plaintiff's independently existing constitutional rights on which he has based his § 1983 claim regardless of how comprehensive of an enforcement scheme the CWA contained. *See Classic Communications*, 956 F.Supp. at 906. Thus, as the Eight Circuit has explained:

> *Sea Clammers* in no way restricts a plaintiff's ability to seek redress via § 1983 for the violation of independently existing constitutional rights, even if the

same set of facts also gives rise to a cause of action for violation of statutory rights.

*Crawford v. Davis*, 109 F.3d 1281, 1284 (8th Cir.1997). The fact that administrative mechanisms exist in the State of Wyoming also does not preclude Plaintiff from maintaining his independent Constitutional claims in federal court. *See Golden State Transit Corp.*, 493 U.S. at 106, 110 S.Ct. 444.

Therefore, the State Defendants' Motion to Dismiss Plaintiff's § 1983 claim is **DE-NIED.**

C. State Defendants' Fed.R.Civ.P. 12(b)(1) and 12(b)(6) Motion to Dismiss Plaintiff's Constitutional Taking Claims for Lack of Subject Matter Jurisdiction and Failure to State a Claim.

State Defendants argue that Plaintiff's Fourth and Fifth Causes of Action, which respectively allege a taking of private property without just compensation and due process, should be dismissed for three reasons: (1) Plaintiff's claims are not ripe for federal court review; (2) Plaintiff's Fifth Cause of Action–Taking of Private Property without Due Process of Law-is subsumed by his Fourth Cause of Action alleging a Taking of Private Property without Just Compensation; and (3) Plaintiff fails to state a claim upon which relief can be granted. (State Defs.' Rule 12(b) Mot. to Dismiss Plaintiff's Compl., at p. 20). Plaintiff responds that: (1) his taking claims are ripe for review because the State Defendants have taken "affirmative and concrete action" by improperly issuing permits to RRI which has destroyed his ranch and its economic viability; (2) his due process taking claim is not subsumed by his just compensation taking claim because State defendants have used their power in an "abusive, irrational or malicious way in a setting not encompassed by an enumerated right"; and (3) that he has

stated a claim upon which relief can be granted. (Pl.'s Resp. to State Defs.' Mot. to Dismiss, at 19–22).

State Defendants assertion that Plaintiff's takings claims are not ripe is a challenge to this Court's subject matter jurisdiction; accordingly, if Plaintiff's claims are not ripe they must be dismissed. *See* Fed.R.Civ.P. 12(b)(1), 12(h)(3); *J.B. Ranch, Inc. v. Grand County*, 958 F.2d 306, 308 (10th Cir.1992); *Bateman v. City of West Bountiful*, 89 F.3d 704, 706 (10th Cir.1996). Although a challenge to a district court's subject matter jurisdiction is usually a threshold issue, in claims asserting an unconstitutional taking under the Fifth and Fourteenth Amendments the question is uncharacteristically intertwined with the plaintiff's allegations in his complaint. *See, e.g., Rau v. City of Garden Plain*, 76 F.Supp.2d 1173, 1175–76 (D.Kan. 1999). As a result, this Court will not address the ripeness issue until it has addressed the State Defendants' other arguments.

1. Plaintiff's Fourteenth Amendment Takings Cause of Action is Subsumed by his Fifth Amendment Takings Cause of Action.

■ The State Defendants correctly assert that in the Tenth Circuit, Plaintiff's more generalized takings claim premised on a violation of the Fourteenth Amendment's Due Process Clause is subsumed by his more particular takings claim premised on a violation of the Fifth Amendment's Just Compensation Clause. Following the Supreme Court's directive in *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), the Tenth Circuit has consistently held that:

Because the Just Compensation Clause of the Fifth Amendment imposes very specific obligations upon the government when it seeks to take private property,

we are reluctant in the context of a factual situation that falls squarely within that clause to impose new and potentially inconsistent obligations upon the parties under the substantive or procedural components of the Due Process Clause. It is appropriate ... to subsume the more generalized Fourteenth Amendment due process protections within the more particularized protections of the Just Compensation Clause. *Miller v. Campbell County,* 945 F.2d 348, 352 (10th Cir.1991); *see also, J.B. Ranch,* 958 F.2d at 309 (holding plaintiff's takings claims based on a violation of the procedural Due Process Clause "do not merit analysis distinct from that already discussed with respect to the Fifth Amendment claim."); *Rocky Mountain Materials & Asphalt, Inc. v. Bd. of County Comm'nrs of El Paso County,* 972 F.2d 309, 311 (10th Cir.1992) (same); *Bateman,* 89 F.3d at 709 (holding plaintiff's due process and equal protection claims are subsumed within the more particularized protections of the Takings Clause); *Rau,* 76 F.Supp.2d at 1177 (holding plaintiff's substantive and procedural due process clause claims are subsumed within the Takings Clause); *Anderson v. Alpine City,* 804 F.Supp. 269, 275–76 (D.Utah 1992) (same).

Plaintiff, recognizing that his due process claims may not stand independently from his just compensation claim obstreperously mischaracterizes the Tenth Circuit's holding in *Miller.* Plaintiff argues that in *Miller* "the court held that a 'plaintiff may still state a claim for violation of substantive due process where it is alleged that the government has used its power in

an abusive, irrational or malicious way in *setting not encompassed by some other enumerated right* [ ]' " thereby creating an exception to the general rule that a due process claim is subsumed by a more particular takings claim. (Pl.'s Resp. to State Defs.' Mot. to Dismiss, at p. 20). In reality, as explained above, the court in *Miller* held that the plaintiff's due process claims *were subsumed* by his takings claim and did not create any such exception. *Miller,* 945 F.2d at 352–53.[10]

Based on consistent Tenth Circuit precedent, this Court **FINDS** Plaintiff's more generalized Fifth Cause of Action for the Taking of Private Property Without Due Process of Law is subsumed within Plaintiff's more particularized Fourth Cause of Action for Taking of Private Property Without Just Compensation. Therefore, the State Defendants' Motion to Dismiss Plaintiff's Fifth Cause of Action is **GRANTED**.

2. Plaintiff States a Claim for the Taking of Private Property Without Just Compensation.

Defendant argues that Plaintiff has failed to state a claim under the Fifth Amendment's Taking Clause because plaintiff's complaint does not allege facts sufficient to support a "regulatory" or "physical" taking by the State. (Br. in Supp. of State Defs.' Rule 12(b) Mot. to Dismiss Pl.'s Compl., at pp. 13–17; Br. in Supp. of State Defs.' Rule 12(b) Mot. to Dismiss Pl.'s Second Am. Compl., at pp. 5–9). Plaintiff responds that State Defendants have effectuated a physical and reg-

---

**10.** The language quoted by the Plaintiff as the Tenth Circuit's "holding" was a quote from the *Ninth Circuit's* decision in *Sinaloa Lake Owners Ass'n v. City of Simi Valley,* 882 F.2d 1398, 1408–09 n. 10 (9th Cir.1989). The Tenth Circuit specifically did not address the merits of this purported "exception" and distinguished it because "the facts of that case

[were] *so different from the facts of this case* ...." *Miller,* 945 F.2d at 353 (emphasis added). Additionally, even if an "exception" was created to the general rule in *Sinaloa,* it has been *specifically* overruled by the Ninth Circuit. *See Armendariz v. Penman,* 75 F.3d 1311, 1325–26 (9th Cir.1996).

ulatory taking by mal-and non-feasance in the issuance of NPDES permits, administration of their regulatory duties, and in providing Plaintiff with an adequate ability to obtain relief through the State's administrative procedures. (Pl.'s Combined Resp. to All Defs.' Mots.' to Dismiss Pl.'s Second Am. Compl., at p. 6).

In pertinent part, § 1983 provides that "[e]very person who, under color of [law] ... subjects ... any citizen of the United States ... to the deprivation of any rights ... secured by the Constitution ... shall be liable to the party injured in an action at law ...." 42 U.S.C. § 1983. To state a claim under 42 U.S.C. § 1983 a plaintiff must *allege:* (1) the deprivation of a federal constitutional or statutory right; and (2) the deprivation of that right was taken under the color of state law. *Johnson v. Rodrigues*, 293 F.3d 1196, 1201–02 (10th Cir.2002); *Summum v. City of Ogden*, 297 F.3d 995 (10th Cir.2002); *Doyle v. Okla. Bar Ass'n*, 998 F.2d 1559, 1567 (10th Cir. 1993). Plaintiff has alleged that the State Defendants acted "under the color of state law" in taking Plaintiff's property and State Defendants have not challenged that assertion. (Pl.'s Second Am. Compl., at ¶ 72). Accordingly, this Court will only consider whether Plaintiff was deprived of a federal statutory or Constitutional right.

 Plaintiff has alleged that the State Defendants have effectuated a physical or regulatory taking of his property without just compensation. (Pl.'s Second Am. Compl., at ¶¶ 67, 70, 72; Pl.'s Combined Resp. to All Defs.' Mots. to Dismiss Pl.'s Second Am. Compl., at p. 6). The Fifth Amendment prohibits a state from taking a citizen's property without just compensation. U.S. Const. amend. V; *Chicago, Burlington & Quincy R.R. v. Chicago*, 166 U.S. 226, 17 S.Ct. 581, 41 L.Ed. 979 (1897) (applying, for the first time, a provision of the Bill or Rights-the Takings Clause-to the states). In order to demonstrate that a state has violated the Fifth Amendment, a Plaintiff must show: (1) the state deprived him of his property; and (2) that the state refused to compensate him for his loss. *Miller,* 945 F.2d at 352. Under the second element, failure to seek review of the government's action pursuant to the procedures authorized by state law renders the takings claim unripe. *Bateman v. City of West Bountiful,* 89 F.3d 704, 706 (10th Cir.1996).

### a. Plaintiff's Deprivation of Property.

 Plaintiff argues that the State Defendants are "destroying" his alfalfa meadows and "ruining" his ranch for a public use-the development of CBM at the lowest possible cost (albeit by private producers)-by permitting RRI to discharge CBM process water in violation of the applicable State rules and regulations. (Pl.'s Second Am. Compl., at ¶ 72; Pl.'s Resp. to State Defs.' Mot. to Dismiss, at p. 18). One way the government can take a citizen's property is by physical possession or occupation. *See, e.g., Loretto v. Teleprompter Manhatten CATV Corp.*, 458 U.S. 419, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982). The Supreme Court has indicated that the government can physically take a citizen's property through constructive possession. *United States v. Causby*, 328 U.S. 256, 261, 66 S.Ct. 1062, 90 L.Ed. 1206 (1946). Additionally, where water is superinduced onto private property and that water destroys the land's usefulness, it is a taking within the meaning of the Fifth Amendment. *Pumpelly v. Green Bay Co.*, 80 U.S. (13 Wall) 166, 181, 20 L.Ed. 557 (1871). Thus, this Court finds that Plaintiff has alleged sufficient facts to state a claim for a physical taking by the State Defendants. Therefore, State Defendants' Motion to Dismiss Plaintiff's Fourth Cause of Action is **DENIED.**

Plaintiff has also alleged a regulatory taking. (Pl.'s Second Am. Compl., at ¶¶ 67, 72). Plaintiff argues that the State Defendants have failed to perform their statutory and regulatory obligations. (Pl.'s Resp. to State Defs.' Mot. to Dismiss, at p. 18). The State Defendants' nonfeasance has resulted in the destruction and loss of the financial viability of Plaintiff's ranch. (Id. at p. 21). Hence, State Defendants have, in effect, appropriated Plaintiff's property for the benefit of economic development, which in turn promotes the common good for Wyoming citizens. (Id. at 19). Plaintiff has not, however, alleged that at the current time the State Defendants' actions have deprived him of *all* economically beneficial uses of his land.

Government regulation can constitute a taking if a regulation goes "too far," which, according to Justice Holmes, occurs when that regulation makes it commercially impracticable to engage in the economic activity under consideration. *See Pennsylvania Coal v. Mahon*, 260 U.S. 393, 414–15, 43 S.Ct. 158, 67 L.Ed. 322 (1922) (holding that the state regulation of coal went "too far" and constituted a taking when the regulation made it commercially impracticable to mine certain coal). The Supreme Court has, however, " 'generally eschewed' any set formula for determining how far is too far, choosing instead to engage in 'essentially ad hoc, factual inquiries.' " *Tahoe–Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 535 U.S. 302, 122 S.Ct. 1465, 1481, 152 L.Ed.2d 517 (2002) *quoting Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1015, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992).

▆ In the Tenth Circuit, "[a] regulation 'goes too far' so as to effect a regulatory taking if (1) it deprives an individual of all economically beneficial use of his or her property; or (2) it does not substantially advance state interests." *Clajon Prod. Corp. v. Petera*, 70 F.3d 1566, 1576 (10th Cir.1995); *see also Marshall v. Bd. of County Comm'rs*, 912 F.Supp. 1456, 1472 (D.Wyo.1996). The Supreme Court recently explained that when a regulation does not deprive a plaintiff of "all" economically beneficial use of his land, the district court should perform a "more fact specific inquiry" to determine whether a regulatory taking occurred. *Tahoe–Sierra Preservation Council, Inc.*, 122 S.Ct. at 1484. The Court instructed that this fact specific inquiry is the *"Penn Central* inquiry into all of the relevant circumstances in [a] particular case[ ]." *Id.* at 1485.[11] Under the second element articulated by the Tenth Circuit in *Petera*, "[e]ven if a court determines that the restrictions imposed on the use of land do not completely deprive a plaintiff of all economically beneficial use of property, such restrictions could still constitute a taking if 'it failed to substantially advance a legitimate governmental interest.' " *Marshall*, 912 F.Supp. at 1473 *quoting Petera*, 70 F.3d at 1578.

▆ For purposes of this motion, this Court has not conducted the *Penn Central* inquiry because it finds Plaintiff has sufficiently alleged that the State Defendants inaction fails to advance a legitimate government interest. The Plaintiff has alleged the State Defendants have effectuated a regulatory taking by "ignoring their statutory and regulatory obligations in spite of Swartz's many requests that they

---

**11.** A *Penn Central* inquiry requires the district court to consider: (1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with investment-backed expectations; and (3) the character of the governmental action. *Penn Central Transp. Co. v. New York City,* 438 U.S. 104, 124, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978).

take appropriate action, and instead have permitted RRI to continue their CBM operations in such a manner as to cause an unduly harsh impact on Swartz's use of his property." (Pl.'s Second Am. Compl., at ¶¶ 67, 72). Taking Plaintiff's allegations as true, the State Defendants have "destroyed" Plaintiff's ranch by failing to enforce federal and state laws. This Court finds that a public official's failure to perform its statutory and regulatory duties which results in the destruction of private property to the point it is no longer "financially viable" does not serve a legitimate state interest.

b. Ripeness.

To state a claim for the taking of private of property without just compensation in violation of the Fifth Amendment, the Plaintiff must show that he was deprived of his property and that the state refused to compensate him for the deprivation. *Miller*, 945 F.2d at 352. Defendant argues that Plaintiff sought compensation from the government, but failed to do so properly; therefore, because the claim was not properly filed, he did not request compensation from the State and his claim is not ripe. (Br. in Supp. of State Defs.' Rule 12(b) Mot. to Dismiss Pl.'s Compl., at pp. 19–20). Additionally, State Defendants assert that Plaintiff's claim is not ripe because the WDEQ has not made a final decision on the water quality standards and NPDES permits at issue. (*Id.* at p. 18). Plaintiff responds that there exists no procedure for him to obtain compensation for the taking of his property because he filed a claim for damages with the State pursuant to the Wyoming Governmental Claims Act and the State has failed to respond. Plaintiff further argues that § 1983 does not require him to exhaust administrative remedies and that he has suffered "an injury sufficiently concrete to permit meaningful judicial review." (Pl.'s

Resp. to State Defs.' Mot. to Dismiss, p. at 21).

i. Plaintiff's Physical Taking Claim.

 As noted above, this Court finds that Plaintiff has alleged sufficient facts to state a claim for a physical taking of his ranch property by State Defendants. In order for a claim to be ripe, the plaintiff must demonstrate: (1) the issues raised in the his complaint are "fit for judicial resolution"; and (2) that he will suffer hardship if the court withholds judicial review of those issues. *Sierra Club v. Yeutter*, 911 F.2d 1405, 1415 (10th Cir.1990). A plaintiff suffers hardship if, among other things, there is a direct impact on the day-to-day activities of his business. *Id.* Cases involving prudential ripeness requirements in regulatory takings cases are inapposite in the context of a physical takings claim. *See Tahoe–Sierra Preservation Council*, 122 S.Ct. at 1479 (noting that courts should not apply the Supreme Court's "precedent from the physical takings context to regulatory takings claims."); *Bateman*, 89 F.3d at 706 (noting that the ripeness standards articulated in *Williams* arose in a "regulatory takings claim").

 Plaintiff has alleged that the State Defendants' constructive possession of his ranch by permitting RRI to superinduce CBM discharge water has diminished the financial viability of his ranch, destroyed his property, and that the continuing discharge of CBM process water into his ranch will have a direct adverse effect on his day-to-day ranching business. (Pl.'s Second Am. Compl., at ¶¶ 67, 70, 72; Pl.'s Resp. to State Defs.' Mot. to Dismiss, at p. 21). The Court **FINDS** that Plaintiff has made a sufficient allegation of an actual and concrete injury which will harm Plaintiff if this Court withholds judicial review. Therefore, Plaintiff's physical taking claim is ripe and the State Defendants' Motion

to Dismiss Plaintiff's Fourth Cause of Action is **DENIED.**

ii. Plaintiff's Regulatory Takings Claim.

 As noted above, this Court alternatively finds that Plaintiff has alleged sufficient facts to state a claim for a regulatory taking. The Supreme Court has imposed "strict ripeness requirement[s] on landowners asserting regulatory takings...." *Tahoe–Sierra Preservation Council,* 122 S.Ct. at 1488. A plaintiff must demonstrate two things pursuant to these strict requirements before his claim will be considered ripe: (1) that the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue; and (2) the plaintiff has sought compensation through State procedures for the deprivation of his property. *Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City,* 473 U.S. 172, 186, 194, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985). A failure of either requirement renders plaintiff's claim unripe. *Bateman,* 89 F.3d at 706–707.

In *Bateman,* the Tenth Circuit explained these prudential ripeness requirements:

> [Plaintiff] argues that he should not be required to seek review from the [administrative agency charged with implementing the challenged regulations] prior to filing his § 1983 action because § 1983 does not require a litigant to first exhaust administrative remedies. *See Patsy v. Flordia Bd. of Regents,* 457 U.S. 496, 516, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982). This same argument was rejected in *Williamson:* "The question [of] whether administrative remedies must be exhausted is conceptually distinct ... from the question [of] whether

an administrative action must be final before it is judicially reviewable." *Williamson,* 473 U.S. at 192, 105 S.Ct. 3108. Whereas exhaustion generally refers to the requirement that a litigant resort to available administrative or judicial procedures prior to filing a federal lawsuit, the finality requirement seeks to ensure that the issues and the factual components of the dispute are sufficiently fleshed out to permit meaningful judicial review.

*Bateman,* 89 F.3d at 707. The court then went on to note that it "agreed [the plaintiff] need not exhaust his available administrative remedies prior to filing a § 1983 action." *Id.* at 708.[12] However, the plaintiff in *Bateman* was still required to obtain a final decision from the administrative agency charged with implementing the challenged regulations. *Id.*

 Plaintiff has satisfied both of the requirements necessary to make his takings claim ripe for review. The WDEQ has issued RRI NPDES permits. (Pl.'s Second Am. Compl., at ¶ 21). Plaintiff has requested a hearing before the Wyoming Environmental Quality Council (WEQC) to protest the issuance of RRI's NPDES permits because the State allegedly issued the permits in violation of the Wyoming Environmental Quality Act and the Wyoming Administrative Procedure Act. (Br. in Supp. of State Defs.' Rule 12(b) Mot. to Dismiss Pl.'s Compl., Ex. B). In essence, Plaintiff's complaint to the WEQC is that the rules for issuing permits are invalid and therefore RRI's NPDES permits are invalid. (*id.,* Ex. B, at pp. 1–4). State Defendants assert this facial challenge to the "guidance documents" for issuing NPDES permits precludes judicial review of Plaintiff's constitutional and federal

---

**12.** It is on these grounds that Court has denied State Defendants' Motion to Dismiss for Failure to Exhaust Administrative Remedies.

statutory claims. However, the "final" agency action at issue in Plaintiff's taking and CWA claims was the issuance of the NPDES permits to RRI on January 1, 2002. This was a final decision by the WDEQ regarding how it applies the current standards to the Plaintiff's property. Hence, the factual components of the dispute are sufficiently fleshed out to permit meaningful judicial review by this Court.

 The second requirement Plaintiff must satisfy in order for his takings claim to be ripe is that he sought compensation from the state for his loss and the State refused to compensate him. The Wyoming Constitution prohibits the taking of private property without just compensation. Wyo. Const. art. 1, § 33. An individual must file an itemized written statement with the appropriate auditor before any money can be paid out of the state treasury to satisfy any demand against the state. Wyo. Const. art. 16, § 7; *Wyo. State Hwy. Dep't v. Napolitano*, 578 P.2d 1342, 1347 (Wyo.1978) (noting "Article 16, [s]ection 7, is no more than a regulation of the procedure by which the rights guaranteed by Article I, [s]ection 33, will be exercised."). Further, the Wyoming Governmental Claims Act, Wyo. Stat. Ann. §§ 1–39–101 to 1–39–121, requires that any claim made against the State should include (1) the time, place, and circumstances of the alleged loss or injury and, if known, the name of the public employee involved; (2) the name, address, and residence of the claimant and his attorney; and (3) the amount of compensation demanded. Wyo. Stat. Ann. § 1–39–113(b)(i)–(iii) (2001). The procedural requirements in the Wyoming Governmental Claims Act apply to demands against the state for compensation. *Waid v. Wyo. Dep't of Tranp.*, 996 P.2d 18, 24–25 (Wyo. 2000) (holding the time limits in Wyo. Stat. Ann. § 1–39–113(a) apply in an inverse condemnation action).

Plaintiff has alleged that there is no procedure in Wyoming for him to obtain compensation for the taking of his property. Nevertheless, on September 28, 2001, he filed a claim for damages with the State of Wyoming in a manner that complies with the Wyoming Governmental Claims Act (and therefore Article 16, § 7 of the Wyoming Constitution). (Pl.'s Second Am. Compl., at ¶¶ 68, 69); (Br. in Supp. of State Defs.' Rule 12(b) Mot. to Dismiss Pl.'s Compl., Ex. C). To date, the State has failed to respond to that demand for compensation. (Pl.'s Second Am. Compl., at ¶ 68).

State Defendants argue that Plaintiff is not entitled to a response because he improperly filed his claim; that is, Plaintiff failed to file an "itemized" statement as required by Article 16, § 7. (Br. in Supp. of State Defs.' Rule 12(b) Mot. to Dismiss Pl.'s Compl., at p. 19–20). However, this Court finds Plaintiff fulfilled Wyoming's statutory and Constitutional requirements for filing a "Notice of Claim" against the state because he complied with every enumerated requirement in those provisions. With respect to the "itemized list," Plaintiff demanded compensation for the destruction of his ranch, including his water rights. Defendant was not able to point to, nor was this Court able to find, any Wyoming statute or Constitutional provision which required Plaintiff to provide the State with an itemized breakdown of how his damage figure was calculated.

Therefore, this Court finds Plaintiff's alleged regulatory takings claim is ripe for review because he has satisfied both of the *Williamson* ripeness requirements.

3. Conclusion.

This Court **FINDS** Plaintiff's more generalized Fifth Cause of Action for Taking of Private Property Without Due Process of Law is subsumed within Plaintiff's more

particularized Fourth Cause of Action for Taking of Private Property Without Just Compensation. For all of the aforementioned reasons, the State Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint for Failure to State a Claim upon which relief can be granted and Failure to Exhaust Administrative Remedies is **DENIED**.

D. State Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint pursuant to Fed.R.Civ.P. 12(b)(6) based on Qualified Immunity.

State Defendants argue that they are entitled to qualified immunity because Plaintiff has failed to allege that their actions violated a federal constitutional right-the taking of property without just compensation. (Br. in Supp. of Defs.' Rule 12(b) Mot. to Dismiss Pl.'s Compl., at p. 22). Further, State Defendants assert that even if Plaintiff has alleged a violation of the Takings Clause, the alleged constitutional deprivation was not clearly established because "[t]here is no United States Supreme Court or Tenth Circuit precedent which would put the State Defendants on notice that their permitting actions under the CWA could result in a taking of Plaintiff's property." (Id. at 23). Plaintiff responds that he has alleged a Takings Clause violation and that the "law regarding takings ... is clearly established." (Pl.'s Resp. to State Defs.' Mot. to Dismiss, at p. 23–24).

As an initial matter, this Court notes that Plaintiff has sued the State Defendants in both their official and individual capacities. In official capacity suits, the real party in interest is the government entity, not the public official himself. *Hafer v. Melo,* 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). The defense of qualified immunity does not apply to public officials sued in their official capaci-

ty, *Moore v. City of Wynnewood,* 57 F.3d 924, 929 n. 4 (10th Cir.1995). However, the public official may raise any immunity which is possessed by the government entity. *Kentucky v. Graham,* 473 U.S. 159, 167, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). The State Defendants have asserted sovereign immunity from suit, however, this Court has found that the *Ex parte Young* exception to that immunity applies in this case. Therefore, to the extent that Plaintiff has sued State Defendants for prospective injunctive relief in their official capacities, they are not entitled to the defense of qualified immunity.

In suits brought against public officials in their individual capacities, the agents may assert the defense of qualified immunity. *Id.* at 166–67, 105 S.Ct. 3099. "Qualified immunity protects public officials from individual liability in a[§ ] 1983 action unless the officials violated 'clearly established ... constitutional rights of which a reasonable person would have known.'" *Workman v. Jordan,* 32 F.3d 475, 478–79 (10th Cir.1994) *quoting Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Thus, in order to overcome the qualified immunity defense, the Plaintiff must allege facts sufficient to show: (1) the defendant's conduct violated a constitutional right; and (2) that law was "clearly established" when the violation occurred. *Workman,* 32 F.3d at 479; *Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991). Generally, a law is "clearly established" if there is " 'a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains.'" *Marshall v. Bd. of County Comm'nrs for Johnson County,* 912 F.Supp. 1456, 1466–67 (D.Wyo.1996) *quoting Medina v. City and County of Denver,* 960 F.2d 1493, 1498 (10th Cir.

1992). However, it is not necessary for the Plaintiff to find a case with exact corresponding factual circumstances because public officials are required to make reasonable applications of the prevailing law to their own circumstances. *Currier v. Doran,* 242 F.3d 905, 923 (10th Cir.2001).

 Plaintiff has alleged that the State Defendants failure to perform their statutory and regulatory obligations (i.e., allowing RRI to discharge "toxic" CBM process water into Wildcat Creek) has effectuated a physical taking of Plaintiff's private property without just compensation in violation of the Fifth Amendment. (Pl.'s Second Am. Compl., at ¶¶ 67, 72; Pl.'s Resp. to State Defs.' Mot. to Dismiss, at p. 19). This satisfies the Plaintiff's first requirement to overcome the qualified immunity defense.

Whether the law with respect to the Takings Clause of the Fifth Amendment is "clearly established" is more difficult. This Court finds that the law with respect to physical takings is clearly established because the Supreme Court's "jurisprudence involving ... physical takings is as old as the Republic and, for the most part, involves the straightforward application of *per se* rules." *Tahoe–Sierra Preservation Council,* 122 S.Ct. at 1478. In the regulatory taking context, the Court's jurisprudence is also relatively clear. *See id.* at 1480 (noting the Supreme Court has "repeatedly and consistently" followed the rule that if a regulation goes too far it will be recognized as a regulatory taking). The problem, however, is that in order to determine if a regulation goes too far, the Supreme Court has consistently and repeatedly engaged in ad hoc factual inquiries. *See id.* at 1480–81. Thus, it is clearly established that a regulatory taking will be determined on a case-by-case basis.

This Court finds that Plaintiff has carried his burden of putting the State Defendants on notice that their conduct may have been in violation of the Constitution. Plaintiff's alleged continuing efforts to have the State Defendants enforce their statutory and regulatory obligations, which in turn would have halted the destruction of his ranch and depletion of its economic viability, was sufficient to put the State Defendants on notice that under preexisting law, their conduct may have been unlawful. A review of the Supreme Court's decision in *Tahoe–Sierra Preservation Council* where the Court explained its regulatory takings jurisprudence would have alerted State Defendants to their potential unconstitutional behavior.

This Court **FINDS** the State Defendants are not entitled to the qualified immunity defense in either their official or individual capacities. Therefore, the State Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint on the basis of Qualified Immunity is **DENIED**.

### *Conclusion.*

This Court finds:

1. The Eleventh Amendment precludes Plaintiff from maintaining any claims against Hemmer and Beach while they were acting in their official capacities: (1) for money damages; or (2) where Plaintiff seeks to require Hemmer or Beach to comply with Wyoming state law.

2. This court has subject matter jurisdiction over Plaintiff's claims against Hemmer and Beach for prospective injunctive relief under the *Ex parte Young* doctrine.

3. Plaintiff has stated a claim pursuant to 42 U.S.C. § 1983.

4. Plaintiff's Fifth Cause of Action is subsumed by his Fourth Cause of Action.

5. Plaintiff has alleged sufficient facts to state a claim for a physical and regulatory taking; and those claims are ripe for review.

6. The defense of qualified immunity is not available to Hemmer or Beach.

**THEREFORE, IT IS HEREBY OR-DERED** that State Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint is **GRANTED** (1) to the extent Plaintiff's Eighth Cause of Action seeks monetary damages against the Hemmer and Beach while they were acting in their official capacity; and (2) to the extent Plaintiff's Seventh Cause of Action seeks require Hemmer and Beach to Comply with Wyoming State law. The State Defendants Motion to Dismiss Plaintiff's Second Amended Complaint Pursuant to Fed. R. Civ. 12(b)(1), 12(b)(2), and 12(b)(6) is DENIED subject to the limitations above.

II. Defendant RRI's Motion to Dismiss Plaintiff's Second Amended Complaint Pursuant to Fed.R.Civ.P. 12(b)(1), 12(b)(6), 12(b)(7), and 19.

 A. RRI's Motion to Dismiss Plaintiff CWA claim for Failure to State a Claim Pursuant to Fed.R.Civ.P. 12(b)(6).

Plaintiff's Third Cause of Action alleges that "RRI violated and continues to violate" the Clean Water Act, 33 U.S.C. §§ 1251 to 1386, by violating the terms of its NPDES permits. (Pl.'s Second Am. Compl., at ¶¶ 61, 62). RRI argues Plaintiff has failed to state a claim under the CWA because Plaintiff's claim: (1) is barred by the CWA's "permit shield" provisions, (Mem. in Supp. of RRI's Mot. to Dismiss Pl.'s Second Am. Compl., at p. 4); (2) "impermissibly seeks to have the court engage in a technical analysis to set effluent standards, as opposed to enforce established standards," (*id.*); and (3) is premised only on RRI's past "permit violation[s]," (*id.* at 5).

Plaintiff brought his claim against RRI under the CWA's citizen suit provision. The CWA allows citizens to file suit to enforce the Act if they can demonstrate that a NPDES permit holder is in violation of state-imposed "effluent standards or limitations." 33 U.S.C. § 1365(a)(1). The CWA defines a "citizen" as any person having an interest that is, or may be, adversely affected by the permit holder's alleged violations of the Act. *Id.* § 1365(g). An "effluent standard or limitation" includes the discharge of a pollutant in violation of the CWA or an NPDES permit. *Id.* at 1365(f). If a person prevails in a citizen suit under the CWA, the court "may order any relief it considers necessary to secure prompt compliance with the Act." *Wilson,* 989 F.Supp. at 1173; *see also* 33 U.S.C. § 1365(a) (providing that the court may enforce the effluent standard or limitation, order injunctive relief, or impose civil penalties against a permit violator). The Supreme Court has held, however, that the CWA does not permit citizen suits based on "wholly past" violations of the Act. *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation,* 484 U.S. 49, 64, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987). Nevertheless, if the plaintiff-citizen alleges an ongoing violation of the Act, it is sufficient to confer jurisdiction on a federal district court. *Id.* at 64–66, 108 S.Ct. 376.

In sum, to state a claim under the CWA's citizen suit provision, a complaint must allege: (1) that the plaintiff has an interest that is or may be adversely affected;[13] (2) by a person's;[14] (3) ongoing;[15]

---

13. This is the "citizen requirement." The CWA's definition of "citizen" and the Act's legislative history demonstrate that the "citizen requirement" for maintaining suit in federal court is actually a standing requirement. *See e.g. Sierra Club v. Morton,* 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972); S. Rep.

92–1236, 92d Cong., 2d Sess. 146 (1972) (Conference Report).

14. The CWA defines a person as an individual, entity, or state. *See* 33 U.S.C. § 1362(5).

15. To satisfy this element the plaintiff need

(4) violation of an effluent standard or limitation (e.g., NPDES permit).[16]

■ In the present case, the Plaintiff has pled sufficient facts to state a claim for a violation of the CWA. Plaintiff has alleged (1) that his interest in his ranch and its economic viability will be adversely affected, (Pl.'s Second Am. Compl., at ¶¶ 24, 25, 26, 27, 30, 42); (2) by RRI's (*id.* at ¶¶ 4, 14, 21) (3) past and continuous (*id.* at ¶¶ 23, 28, 35, 36, 37); (4) discharge of CBM water into Wildcat Creek in violation of its NPDES permit issued by the WDEQ (*id.* at ¶¶ 47, 50, 52, 61, 62). This Court finds Plaintiff has alleged sufficient facts to maintain a citizen suit under the CWA. Further, the Court finds that Plaintiff's allegations of an "ongoing" NPDES permit violation were made in good faith based on his independently obtained samples.

Thus, RRI's argument that it is protected by the "permit shield" provisions of the CWA are without merit because Plaintiff has alleged that RRI violated its NPDES permit. Second, this Court does not believe it will have to engage in "a technical analysis to set effluent standards" to determine whether RRI was, and continues to be, in violation of its NPDES permit and thus liable under the CWA. Finally, for purposes of the motion to dismiss, this Court does not need to determine whether Plaintiff can prove an ongoing violation of RRI's permits. *See, e.g., San Francisco Baykeeper, Inc. v. Moore,* 180 F.Supp.2d 1116, 1121 n. 4 (E.D.Cal.2001).

Therefore, RRI's Motion to Dismiss Plaintiff's Third Cause of Action for failure to state a claim upon which relief may be granted is **DENIED**.

**B.** RRI's Motion to Dismiss Plaintiff's CWA Claim for Lack of Subject Matter Jurisdiction Pursuant to Fed.R.Civ.P. 12(b)(1).

1. The CWA's Notice of Suit Requirement.

RRI argues that Plaintiff's Third Cause of Action-violation of the CWA-should be dismissed for lack of subject matter jurisdiction because Plaintiff failed to provide adequate notice of his intent to sue pursuant to the CWA. (Mem. in Supp. of RRI's Mot. to Dismiss Pl.'s Second Am. Compl., at pp. 6–15; Mem. in Supp. of RRI's Mot. to Dismiss, at pp. 11–13). Plaintiff responds that he has fully complied with the notice requirements set forth in the CWA. (Pl.'s Combined Resp. to All Defs.' Mots. to Dismiss Pl.'s Second Am. Compl., at pp. 10–11; Pl.'s Resp. to RRI's Mot. to Dismiss, at p. 10–14).

■ The CWA imposes a 60–day notice requirement on a person before he or she is permitted to commence a citizen suit under the Act. 33 U.S.C. § 1365(b)(1). The purpose of this notice requirement is to provide government agencies or permit holders a chance to remedy an alleged NPDES permit violation prior to litigation. *Hallstrom v. Tillamook County,* 493 U.S. 20, 29, 110 S.Ct. 304, 107 L.Ed.2d 237 (1989). Specifically, the CWA requires that a plaintiff provide notice of his intent to file suit to: (1) the EPA administrator; (2) the State in which the alleged violation occurs; and (3) the alleged violator of an effluent standard or limitation. 33 U.S.C. § 1365(b)(1)(A). In the Tenth Circuit, this 60–day notice requirement is a mandatory condition precedent to suit. *New Mexico Citizens for Clean Air and Water v. Espa-*

---

only make "a good faith allegation of continuous or intermittent violation ...." *Gwaltney,* 484 U.S. at 64, 108 S.Ct. 376.

16. This formulation of the elements assumes the Plaintiff has provided adequate notice of his intent to sue pursuant to the CWA. *See* 33 U.S.C. § 1365(b).

*nola Mercantile Co., Inc.,* 72 F.3d 830, 833 (10th Cir.1996).

Neither the CWA nor the Supreme Court's decision in *Hallstrom* address the sufficiency or degree of specificity of the notice's "content." *See Wyo. Farm Bureau Fed'n v. Babbitt,* 987 F.Supp. 1349, 1363 (D.Wyo.1997) *rev'd on other grounds* 199 F.3d 1224 (10th Cir.2000). However, the EPA has provided would-be plaintiffs with some guidance. *See* 40 C.F.R. § 135.3(a). The EPA instructs that the notice shall include sufficient information to enable the recipient of the notice to identify: (1) the specific standard or limitation alleged to have been violated; (2) the activity alleged to constitute a violation; (3) the person(s) responsible for the alleged violation; (4) the location of the alleged violations; (5) the date of the alleged violation; and (6) the full name, address, and telephone number of the person giving notice. *Id.*

On January 8, 2002, Plaintiff issued his "Notice of Citizen Suit Under the Clean Water Act" ("Notice") to the EPA administrator, the State of Wyoming, and RRI. Plaintiff's Notice contained the following information: (1) that the standard alleged to be violated was the CWA, 33 U.S.C. § 313(d),[17] 40 C.F.R. § 131.12, and Quality Standards for Wyoming Surface Water, Chapter 1, § 20; (2) the activity causing the violation was the discharge of CBM process water from every well operated by RRI (and the corresponding NPDES permit numbers); (3) that RRI was the person responsible for these violations; (4) that the violations were occurring in the Wildcat Creek basin in Campbell County, Wyoming; (5) that the alleged violations had been occurring continuously since 1999; and (6) the name, address, and telephone number of Ed Swartz-the person providing notice.

This Court finds that Plaintiff has complied with every requirement set forth in the CWA and EPA regulations for providing notice of his intent to sue to RRI. Hence, because the Notice was provided more than 60-days before this action was commenced, he has performed all the condition precedents required by section 1365(b)(1)(A) of the CWA. RRI's arguments to the contrary are rejected. Therefore, RRI's Motion to Dismiss Plaintiff's Third Cause of Action for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1) is **DENIED**.

2. State-Imposed Effluent Limitations in a NPDES Permit.

Plaintiff's Second Amended Complaint alleges that the CBM process water discharged by RRI contains elevated salinity (measured by electric conductivity ("EC")) and sodium absorption ratios ("SAR"). (Pl.'s Second Am. Compl., at ¶¶ 15–18). Allegedly, these elevated salinity and SAR levels have caused damage to Plaintiff's ranch by destroying the soil and limiting the amount of irrigation water available, which decreases crop production. (*Id.* at ¶ 18). Moreover, Plaintiff alleges that the elevated salinity levels are the result of RRI violating the terms of its NPDES permits in the Wildcat Creek basin. (*Id.* at ¶¶ 50, 62).

RRI argues that this Court lacks subject matter jurisdiction over Plaintiff's CWA claim because he does not have standing to bring a citizen suit under the Act to enforce effluent limitations established by a state that are more stringent than required by the federal program (Mem. in Supp. of RRI's Mot. to Dismiss, at p. 14–16). Specifically, Defendant contends that Chapter 1, § 20 of the Wyoming Water Quality Rules is more stringent than the

---

**17.** This section of the United States Code was repealed in 1980. *See* 33 U.S.C.A. § 313 (2002). The Court assumes Plaintiff meant 33 U.S.C.A. § 1313(d) (2002).

federal NPDES program.[18] Plaintiff responds that Chapter 1, § 20 is not more stringent than the federal NPDES program; in fact, Plaintiff argues Chapter 1, § 20 "is merely Wyoming's enactment of federally required standards." (Pl.'s Resp. to RRI's Mot. to Dismiss, at p. 16).

RRI relies primarily on the Second Circuit's decision in *Atlantic States Legal Found., Inc. v. Eastman Kodak Co.*, 12 F.3d 353 (2d Cir.1993) *cert. denied* 513 U.S. 811, 115 S.Ct. 62, 130 L.Ed.2d 19 (1994) to support its argument. In *Eastman Kodak*, a citizen suit was filed alleging the defendant violated the CWA by discharging large quantities of pollutants *not* listed in its SPDES permit into a river. *Id.* at 354–56. The Second Circuit had to determine "whether private groups may bring a citizen suit pursuant to section 505 of the ... Clean Water Act ... to stop the discharge of pollutants not listed in a valid permit issued pursuant to the CWA." *Id.* at 354. In pertinent part, the Second Circuit concluded that

> state regulations, including the provisions of SPDES permits, which mandate 'a greater scope of coverage than that required' by the federal CWA and its implementing regulations are not enforceable through a citizen suit under 33 U.S.C. § 1365.

*Id.* at 359 (finding the plaintiffs lacked standing to maintain the suit); *see also Piney Run Preservation Ass'n v. County Comm'nrs of Carroll County*, 268 F.3d 255, 259, 269 (4th Cir.2001) (holding that the discharge of pollutants *not* listed in a NPDES permit does not violate the CWA

if the permit holder has complied with certain requirements).

■■■ RRI's reliance on *Eastman Kodak* is misplaced. In *Eastman Kodak* and *Piney Run*, the Second and Fourth Circuits were presented with challenges under the CWA's citizen suit provision to the discharge of pollutants *not* listed in an NPDES or SPDES permit. As noted above, one of the "elements" a plaintiff must satisfy in order to state a claim under the section 505 of the CWA is to allege an ongoing violation of an effluent standard or limitation. An effluent standard or limitation includes the discharge of, among other things, a pollutant in violation of an NPDES permit. *See* 33 U.S.C. § 1365(f). A violation of an NPDES permit also violates the CWA. 40 C.F.R. § 122.41(a); *Friends of the Earth v. Laidlaw Environmental Services*, 528 U.S. 167, 174, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000).

■■■ Hence, when state standards are incorporated into a NPDES permit, unlike the scenarios in *Eastman Kodak* and *Piney Run*, those standards are enforceable in a citizen suit under the CWA. *Piney Run*, 268 F.3d at 269 ("An NPDES permit holder is shielded from liability for discharges in compliance with its permit, and is liable for any discharges not in compliance with its permit."); *see also, Gill v. LDI*, 19 F.Supp.2d 1188, 1195 (W.D.Wash. 1998); *Upper Chattahoochee Riverkeeper Fund, Inc. v. City of Atlanta*, 953 F.Supp. 1541, 1553 (N.D.Ga.1996); 33 U.S.C. § 1362(11) (defining an effluent standard or limitation as "*any* restriction established *by a State* or the [EPA] Administra-

---

18. Chapter 1, § 20 provides:

**Agricultural Water Supply.** All Wyoming surface waters which have the natural water quality potential for use as an agricultural water supply shall be maintained at a quality which allows continued use of such waters for agricultural purposes.

Degradation of such waters shall not be of such an extent to cause a measurable decrease in crop or livestock production.

Unless otherwise demonstrated, all Wyoming surface waters have the natural water quality potential for use as an agricultural water supply.

tor on quantities, rates, and concentrations of chemical, physical, biological, and other constituents which are discharged from point sources.") (emphasis added). This is because "an effluent standard or limitation under the [CWA] includes an effluent standard or limitation established by a state to further the goals of the ... Act." *Chattahoochee Riverkeeper*, 953 F.Supp. at 1552. One of the goals of the CWA is to eliminate the discharge of pollutants into, and maintain the integrity of, the Nation's waters. 33 U.S.C. § 1251(a).

Additionally, the water quality standards in Chapter 1, § 20 are not more strict than the federal program. The EPA required the State of Wyoming to adopt an antidegradation policy consistent with its model. *See* 40 C.F.R. § 131.6(d). The EPA's model provides that an antidegradation policy shall maintain and protect "[e]xisting instream water uses and the level of water quality necessary to protect *existing uses* ...." 40 C.F.R. § 131.12(a)(1). In other words, Wyoming's policy, to be consistent with the CWA, must protect and maintain the existing uses of instream water, which in the case of Wildcat Creek is for agricultural purposes. Hence, Chapter 1, § 20 is consistent with the federal NPDES program and not more strict.

Therefore, RRI's Motion to Dismiss Plaintiff's Third Cause of Action for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1) is **DENIED**.

### C. RRI's Motion to Dismiss Plaintiff's Second Amended Complaint For Failure to Join Indispensable Parties Pursuant to Fed.R.Civ.P. 12(b)(7).

RRI argues that Plaintiff's Second Amended Complaint should be dismissed pursuant to Fed.R.Civ.P. 12(b)(7) for "failure to join as necessary parties other CBM producers holding discharge permits in the Wildcat Creek drainage." (Mem. in

Supp. of RRI's Mot. to Dismiss, at p. 16). RRI asserts that because there are at least four other CBM producers discharging into the Wildcat Creek, those producers must be joined in this action: (1) in order to provide the plaintiff with complete relief; (2) to protect the interests of the absent third parties; (3) to protect the WDEQ from being subject to multiple and possible inconsistent judgments; and (4) so that RRI is not prejudiced. Plaintiff views RRI's altruistic arguments with a bit more skepticism and generally asserts that all necessary and indispensable parties have been joined (Pl.'s Combined Resp. to All Defs.' Mots. to Dismiss Pl.'s Second Am. Compl., at p. 9).

### 1. Necessary Parties.

Fed.R.Civ.P. 19(a) governs this Court's determination of whether absent CBM producers are necessary parties. *Sac and Fox Nation v. Norton*, 240 F.3d 1250, 1258 (10th Cir.2001). Rule 19(a) provides the proper framework for determining whether a party is necessary to an action; it provides:

A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Fed.R.Civ.P. 19(a). Hence, Rule 19(a) requires three inquiries to determine whether a person, if feasible, should be joined.

 First, Rule 19 requires a federal court to determine whether complete relief can be accorded among the persons already parties to the action. Fed.R.Civ.P. 19(a)(1). Plaintiff seeks (1) to enjoin RRI from continuing to discharge water in violation of its NPDES permit which has and continues to damage his ranch; (2) damages, under state law, for trespass and nuisance; and (3) to impose civil penalties against RRI for its violation of the CWA. (Pl.'s Second Am. Compl., at p. 17). The absence of other CBM producers in the Wildcat Creek basin will not preclude any of Plaintiff's requested remedies. That Plaintiff's Seventh "Cause of Action" requests that State Defendants be enjoined from continuing to permit RRI and "any and all" other producers of CBM in the Wildcat Creek basin does not change the fact that complete relief can be accorded among parties to this action; it certainly does not warrant dismissal of Plaintiff's claims.

Second, this Court must determine whether the disposition of this action will impair or impede other CBM producers' interests. Fed.R.Civ.P. 19(a)(2)(i). Plaintiff argues that he is only seeking "to prosecute RRI's CWA violations and to recover compensation for the damages that company has caused the Swartz [r]anch." (Pl.'s Resp. to RRI's Mot. to Dismiss, at p. 19). Plaintiff's complaint can be fairly read as indicating that he believes RRI is primarily responsible for the damage to his ranch. Plaintiff is not required to have *his interests impaired or impeded while* collecting evidence of every possible polluter into the Wildcat Creek. Plaintiff's action against RRI and the State Defendants will have no practical effect on other CBM producers in the Wildcat Basin. RRI has not carried its burden of producing evidence showing the nature of the interests possessed by the absent parties or that those interests will be impaired. *See Citizen Band Potawatomi Tribe v. Collier*, 17 F.3d 1292, 1293 (10th Cir.1994).

Third, this Court must determine whether RRI or the State Defendants will be subject to a "substantial risk" of incurring multiple or inconsistent obligations. Fed. R.Civ.P. 19(a)(2)(ii). Plaintiff's requested relief would not subject either the State Defendants or RRI to a substantial risk of incurring multiple or inconsistent obligations because, as noted above, Plaintiff's request for relief seeks essentially two things if RRI is found to be in violation of its NPDES permits: (1) damages and civil penalties imposed against RRI; and (2) an injunction requiring the State Defendants to enforce NPDES effluent limitations (which would also force RRI to stop polluting). Thus, if RRI is found to be in violation of its NPDES permits there is not a "substantial risk" that another court or the WDEQ would impose an inconsistent obligation on RRI; that is, it is incredulous to suggest that another court or the WDEQ would order RRI to continue polluting in violation of its permits.

### 2. Indispensable Parties.

Even if other CBM producers discharging in the Wildcat Creek basin were necessary parties, this Court would not find they were "indispensable" pursuant to Fed.R.Civ.P. 19(b). In pertinent part, Rule 19(b) provides:

> If a person described in [Rule 19(a)(1)-(2)] cannot be made a party, the court shall determine whether in equity and good conscience that action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. . . .

The Tenth Circuit has explained that a "necessary party can be considered an indispensable party only if, 'in equity and good conscience,' a court should not allow the action to proceed in the party's absence." *Sac and Fox Nation,* 240 F.3d at 1259. This Court cannot dismiss Plaintiff's action in equity and good conscience because Plaintiff has alleged that the State Defendants inaction and RRI's actions are threatening to destroy his ranch and he is without other meaningful remedies in Wyoming. *See* Fed.R.Civ.P. 19(b). This consideration outweighs the possible prejudice to the Defendants. Moreover, this Court is confident that it can shape relief in this case that will reduce the chance of prejudice to other CBM producers or the current Defendants.

Therefore, RRI's Motion to Dismiss Plaintiff's Second Amended Complaint pursuant to Fed.R.Civ.P. 12(b)(7) for failure to join necessary or indispensable parties pursuant to Fed.R.Civ.P. 19 is **DENIED**.

D. RRI's Motion to Dismiss Plaintiff's Second Amended Complaint based on the Doctrines of Abstention, Exhaustion, and Primary Jurisdiction.

RRI argues that Plaintiff's CWA claim should be dismissed based on the doctrines of abstention, primary jurisdiction, and/or exhaustion. (RRI's Mot. to Dismiss, at pp. 20–24). However, because this Court has found that Plaintiff has alleged facts sufficient to state a claim under the CWA's citizen suit provision, it does not need to address these arguments. The CWA explicitly vests federal district courts with jurisdiction over citizen suits. 33 U.S.C. § 1365(a) ("The district courts shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties, to enforce . . . an effluent standard or limitation . . . .").

Therefore, RRI's Motion to Dismiss Plaintiff's Third Cause of Action based on the doctrines of exhaustion, abstention, or primary jurisdiction is **DENIED**.

E. State Law Claims.

To the extent that RRI has peripherally asserted that Plaintiff's supplemental claims against it for nuisance and trespass should be dismissed for want of jurisdiction or failure to state a claim, those arguments are rejected. Therefore, this Court **FINDS** that it has jurisdiction over Plaintiff's First and Second Causes of Action pursuant to 28 U.S.C. § 1367.

### Conclusion

This Court finds:

1. The Plaintiff has pled sufficient facts to state a claim for a violation of the CWA.

2. This Court has subject matter jurisdiction over Plaintiff's CWA claims.

3. Plaintiff has not failed to join necessary or indispensable parties pursuant to Fed.R.Civ.P. 19.

**THEREFORE, IT IS HEREBY ORDERED** that Defendant RRI's Motion to Dismiss Plaintiff's Second Amended Complaint Pursuant to Fed.R.Civ.P. 12(b)(1), 12(b)(6), 12(b)(7), and 19 is **DENIED**.